IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF A SEARCH OF: )
)
ONE U.S. POSTAL SERVICE PARCEL )
LOCATED AT A MONTGOMERY COUNTY, )
MARYLAND POLICE FACILITY )

Case No. 23-mj-195-AAQ

**AFFIDAVIT IN SUPPORT OF APPLICATION
FOR A SEARCH WARRANT FOR A U.S. POSTAL SERVICE PARCEL**

Your Affiant, Task Force Officer (TFO) Patrick Skiba, United States Postal Inspection Service, Baltimore, Maryland, being duly sworn, hereby deposes and states as follows:

**I.  Subject Parcels**

1. This is an Affidavit submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the search of the following: a U.S. Mail Parcel, hereinafter referred to as the Subject Parcel. The Subject Parcel is currently located at a Montgomery County, Maryland Police facility. Probable cause exists to believe the Subject Parcel contains evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846. The Subject Parcel is specifically identified as follows:

| Subject Parcel | Express (E), Priority (P) and (F) First Class Tracking ID number | From: Name and Address | To: Name and Address |
|---|---|---|---|
| 1. | (P) 9505 5147 1697 3011 7597 88 | Tom Ramirez<br>13852 Dawson St #A3<br>Garden Grove, Ca 92843 | Tess Nham<br>8915 Lee Manor Dr<br>Ellicott City, MD 21043 |

**II.  Affiant's Training and Experience**

2. Your Affiant, TFO Patrick E. Skiba has been a Montgomery County Department of Police Officer since 2004. Your Affiant is currently assigned to the Special Investigations

Division, Drug Enforcement Section and has been since February 2014. Your Affiant has been a Task Force Officer (TFO) for the United States Postal Inspection Service since February 2022. Your Affiant has completed more than 450 hours narcotics training and related courses. Your Affiant has participated in numerous investigations involving possession with intent to distribute and distribution of controlled substances. In addition, your Affiant has participated in interdictions and controlled deliveries related to narcotics investigations. Moreover, your Affiant has applied for and executed seizure and search warrants which resulted in criminal arrest and prosecution. As a result of your Affiant's training and experience, your Affiant is aware that Priority Mail Express and Priority Mail services are regularly used by narcotic traffickers to ship controlled substances and bulk cash through the U.S. Mail.

      3.      Based upon my training and experience in the field of narcotic interdiction through the mails, I know that there are suspicious characteristics common to many packages that contain narcotics, controlled substances or the proceeds thereof (i.e. U.S. currency). These factors, more fully detailed below, are used to identify packages requiring further investigation. In the case of this search warrant, several of these factors were identified, and the package was alerted to by a drug detection canine. The most common factors or suspicious characteristics routinely observed in the course of screening packages are as follows:

      a.      *Contrasts observed between legitimate business parcels and drug parcels*: As an alternative to First Class Mail (which does not provide a customer with the capability to track the progress of a parcel through the system), the U.S. Postal Service offers Priority Mail Express and Priority Mail. Priority Mail Express is guaranteed (money back) to be delivered on a set date and time, usually overnight. (That deadline is determined at the time of mailing.) The

customer receives a receipt with this guaranteed information, and the sender can opt for a signature requirement at the other end or not.  Customers can track the parcel online by its distinct Priority Mail Express tracking number.  The weight of the package and the distance traveled are the two main factors in setting the price.  Priority Mail Express costs more than Priority Mail.  Priority Mail has a delivery service standard of 1-3 business days, but delivery within that time period is not guaranteed.  Priority Mail is a less expensive alternative to Priority Mail Express, but still provides the ability to track a parcel.  Legitimate businesses using Priority Mail Express typically have a business or corporate account visible on the mailing label, which covers the cost of the mailing.  In contrast, a drug distributor will pay for the cost of mailing the package at the counter by using cash or a credit card.  Business Priority Mail Express parcels typically weigh no more than eight ounces, and business Priority Mail parcels typically weigh no more than two pounds.  Drug packages typically exceed these weights.  Address labels on business parcels are typically typed, whereas those on drug packages are typically handwritten.  In your Affiant's experience, it is fairly easy to separate out smaller parcels, which constitute 70% to 80% of all Priority Mail Express and Priority Mail parcels, from other, heavier parcels.  Typically, drug traffickers use Priority Mail Express, and will opt out of the requirement of obtaining a signature upon delivery.

    b. *Invalid Sender/Return Address*:  When drugs are shipped through the mail, the senders generally do not want them back.  To distance themselves from parcels containing drugs, the return addresses and the names of senders often are fictitious or false.  A fictitious or false address may include anything from an incorrect zip code, to a non-existent house number or street.  The name of the sender is also typically invalid in one of several ways.  Your Affiant has seen packages sent by persons with names of celebrities, cartoon characters, or fictional names.

More often a search of a law enforcement database reflects that there is no association between the name of the sender and the address provided.

        c.    *Invalid Recipient/Address*: It would be counter-productive to put the wrong receiving address on a package, but often the named recipient is not actually associated with the receiving address. This allows the person receiving the package to claim that they did not know about its contents. Sometimes drug packages are addressed to vacant properties with the expectation that the postal carrier will just leave it at the address. The intended recipient will then retrieve it from that location and hope to remain anonymous.

        d.    *Location of Sender*: The fact that a package is sent from a narcotics source state such as Arizona, California, Texas, Washington, Colorado, Puerto Rico and Florida (among others) can also indicate that the parcel contains controlled substances.

        e.    *Smell*: The odor of cocaine, marijuana, and methamphetamine are distinct, and through experience postal inspectors are familiar with these odors. On occasion, a parcel will emit an odor that is easily recognized without the assistance of a canine. Other smells that suggest that a parcel may contain narcotics include the aroma of masking agents. Common masking agents used in an attempt to thwart detection by law enforcement and canines typically include dryer sheets, coffee, mustard, and any other substance that releases a strong smell.

        f.    *Heavy Taping*: Heavily taped parcels are another factor that will suggest a drug parcel. Narcotics parcels often are heavily taped in an effort to keep the smell inside and to forestall easy checking on the interior contents by lifting up a flap. For the same reason, your Affiant has also observed excessive glue on the flaps of narcotics parcels as well.

     g. *Click-N-Ship*: The U.S. Postal Service created Click-N-Ship as a service for frequent mailers and businesses who prefer printing address labels and purchasing postage from their residence or business.  Drug traffickers create Click-N-Ship accounts as a means of giving a legitimate appearance to their drug mailings.  They create the accounts using fictitious account information and often provide pre-paid credit cards as a means of payment, which are difficult to track.  Drug traffickers often use legitimate business return addresses in states other than California and Arizona as a means to deter detection, as these other states are not usually considered "source" states for controlled substances.  The postage labels are printed/typed, unlike the typical drug related mailing label which is handwritten.

    4. It is your Affiant's experience that when these factors are observed, a drug detection canine will likely "alert" next to the parcel, indicating that the dog has detected the presence of narcotics.  As a result, these factors become a reliable way to profile the parcels being shipped every day.

    5. The facts contained in this affidavit are based on my personal knowledge as well as that of the other agents involved in this investigation. All observations that were not made personally by me were related to me by persons with knowledge.  This affidavit contains only that information necessary to establish probable cause to support an application for a search warrant. This affidavit is not intended to include each and every fact and matter observed by or made known to agents of the government.

**III.** **Probable Cause**

    6. On January 13, 2023, the Subject Parcel was identified as having some of the suspicious characteristics commonly associated with parcels containing narcotics.

5

7. The following factors or suspicious characteristics are present with the Subject Parcel:

| Subject Parcel Express or Priority | From Source State: | Weight: | Label: | Senders name associated with address? | Recipients name associated with address? | Canine Alert? |
|---|---|---|---|---|---|---|
| 1. Priority | Yes – CA | 5lbs 12.6ozs | Handwritten | No | No | Yes – Riggs |

8. On January 13, 2023, the Subject Parcel was removed from the mail stream. On January 13, 2023, law enforcement used standard protocol for canine detection to determine whether there was probable cause that the Subject Parcel contained narcotics. Specifically, after being removed from the mail stream, the Subject Parcel was individually placed in a secure area next to several other empty and unused boxes. At that time, narcotic detection canine "Riggs[1]" was brought forward to scan the group of boxes, which included the individual Subject Parcel and the empty and unused boxes placed around the Subject Parcel. The handler observed the canine and then informed agents that "Riggs" alerted to the presence of narcotics for the Subject Parcel.

---

[1] The canine handler for "Riggs" is Montgomery County Police Detective Scott Carson. "Riggs" was last certified in June 2022 and is trained on the odor of cocaine, crack, crystal methamphetamine, heroin, marijuana, and MDMA. Additionally, "Riggs" receives monthly recurrent narcotics odor detecting training.

## IV.     Conclusion

9. Your Affiant submits that based upon the above indicators reflected in the Subject Parcel described herein, based upon my training and experience, and based upon the alert of a trained canine on the Subject Parcel, I believe that there is probable cause that the Subject Parcel contain narcotics or controlled substances, or the proceeds thereof (i.e. U.S. currency), and/or materials relating to the distribution of controlled substances through the U.S. Mail.

*Patrick Skiba*
_____
Patrick Skiba
Task Force Officer
United States Postal Inspection Service

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this __17th__ day of January 2023.

_____
Honorable Ajmel A. Quereshi
United States Magistrate Judge

23-mj-195-AAQ

## ATTACHMENT A

### DESCRIPTION OF PARCEL TO BE SEARCHED

| Subject Parcel | Express (E)€, Priority (P)and (F) First Class Tracking ID number | From: Name and Address | To: Name and Address |
|---|---|---|---|
| 1. | (P) 9505 5147 1697 3011 7597 88 | Tom Ramirez<br>13852 Dawson St #A3<br>Garden Grove, Ca 92843 | Tess Nham<br>8915 Lee Manor Dr<br>Elliott City, MD 21043 |

Located at a Montgomery County, Maryland Police facility.

23-mj-195-AAQ

# ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED

All records and information that constitute fruits, evidence, and instrumentalities of violations of 21 U.S.C. §§ 841 and 846, and 21 U.S.C. § 843(b), including but not limited to:

a. Narcotics or other controlled substances;

b. Narcotics trafficking paraphernalia;

c. United States currency or other financial instruments;

d. Records related to narcotics suppliers, customers, and co-conspirators, and related identifying information;

e. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

f. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and

g. Indicia of possession, custody, or control, including any information related to the use of false or fraudulent identities

Furthermore, as described above, with respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review

1

of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.